**FANENE FETAIAGIA KAVA, Plaintiff**

v.

**FANENE S. SCANLAN, Defendant**

High Court of American Samoa
Land and Titles Division

LT No. 06-94

April 4, 1994

■

Before KRUSE, Chief Justice, AFUOLA, Associate Judge, and BETHAM, Associate Judge.

Counsel:     For Plaintiff, Aviata F. Fa`alevao
             For Defendant, Arthur Ripley, Jr.

Order on Motion to Dismiss:

Defendant Fanene Scanlan moves to dismiss on the basis that plaintiff Fanene Kava's complaint fails to state a claim for which relief may be granted. Defendant argues that plaintiff is once again seeking to relitigate an issue which has been settled in previous court decisions. Underlying the action is plaintiff's outstanding ambition to have a say over certain Fanene family lands known as "Lalopu`a," which prior court decisions have declared as being under the exclusive *pule* of Fanene Scanlan and his predecessors in title.[1]

---

[1] *See Fanene v. Fanene*, 4 A.S.R. 66 (Land & Titles Div. 1972); *Fanene v. Fanene*, 19 A.S.R.2d 69 (Land & Titles Div. 1991).

Fanene Kava seeks a declaration to the effect that the Fanene title attached to the village of Pago Pago is not a split title; that she thus co-holds the Fanene title with defendant Scanlan and so shares *pule* with the latter over all family assets; and that, notwithstanding earlier court decisions to the contrary, there is only one Fanene family, not two separate families, in the village of Pago Pago.

After reviewing the numerous court cases involving the Fanene title of Pago Pago, we find the following: In 1932, the court in *Taofi v. Foster*, 1 A.S.R. 464 (Trial Div. 1932), awarded the Fanene title to Filo Foster, defendant Scanlan's predecessor in title. Filo then singularly held the Fanene title for a period of thirty-three years. In 1965, however, the court allowed the registration of another Fanene titleholder when it granted the matai-succession claim of Vaoali`i K. Fanene, plaintiff Kava's predecessor in title. *See Fanene Filo v. Vaoali`i K. Fanene*, 4 A.S.R. 603 (Trial Div. 1965). Ironically, and over Fanene Filo's vigorous objection, Vaoali`i's application was granted on the basis of his claim that the Fanene title was in fact a "split" title--the antithesis of the position being canvassed by his present-day successor, Fanene Kava.[2] With the registration of Vaoali`i's claim, there were two Fanene titleholders in the village of Pago Pago.

After the death of Vaoali`i, Tauveve L. Fanene filed his application to register the title accordingly left vacant by the death of Fanene Vaoali`i. Tauveve's application, like Vaoali`i's, was also contested by Fanene Filo, who once again asserted that the Fanene title was not a split title. The matter eventually went before the Lands and Titles Division. A review of the Clerk's file, LT No. 1035-69, reveals that the court had initially sent the matter back to the parties with the directive that "all branches of the Fanene family" were to meet and then report back to the Court "in writing" on the question "whether or not the entire family desires that its split Matai title be merged and made whole again." *See Fanene Filo v. Tauveve L. Fanene*, LT No. 1035, Order Calling For Joint Meeting of Fanene Family (April 2, 1970). The parties apparently met or attempted to meet; however, they were not able come to any agreement on the question posed and thus the matter found its way back to the court for resolution. The court, finding that the title "being a split title, and the family having been unable to agree that the title be merged into a single

---

[2] The 1965 court found precedent for Vaoali`i's claim from the Territorial Registrar's records, which reflected dual Fanene-holders on two previous occasions, and was further persuaded by certain corroborative remarks it found in the court's earlier decision in *Taofi v. Foster, supra.*

holder," dismissed Fanene Filo's objection and directed the registration of the title "formerly held by Fanene VAOALI`I in accordance with the law and with the wishes of his branch of the family." *Id.*, Order Dismissing Objection (Oct. 14, 1970) (emphasis in original). With the registration of Tauveve's application, there were once again two registered Fanene titleholders in the village of Pago Pago.

These two Fanene titleholders were again before the court in 1971, over a dispute regarding land "Lalopu`a." *See Fanene v. Fanene*, LT No. 1089-71 (Nov. 1, 1971). It seems that while Tauveve's matai-succession application was pending, Fanene Filo had executed a separation agreement in favor of Herman Scanlan, now Fanene Scanlan, the defendant herein. When this agreement was offered for recordation with the Territorial Registrar, it attracted the separate objections of Tauveve and Fetaiaiga F. Fanene, now Fanene F. Kava, the plaintiff herein. At trial, the parties presented the following stipulated issues to the court: 1) "[Whether] the two Fanene Families, namely, Fanene Filo and Fanene Tauveve, [were] one and the same family? 2) Who has the pule or authority over communal land of the Fanene Family?" The court concluded:

> Fanene Filo and Tauveve Fanene families are two separate, different and distinct families. They, in the past and continue for a period of approximately 70 years conducted themselves as separate families, each not consulting the other in major Samoan family affairs such as weddings and funerals.
>
> . . .
>
> Lalopu`a is communal land of the Fanene Filo Family [under the pule of the Fanene Filo family's senior matai; to wit, Fanene Filo].

Slip op. at 3-4. In an addendum to the decision later entered, the court further held that those members of the Fanene Tauveve side who were residing on Lalopu`a, namely, "Fetaiaiga F. Kava and her children," were entitled to remain on the land subject to the requirement of *tautua* (traditional service) to Fanene Filo. *Fanene v. Fanene*, 4 A.S.R. 66, 67 (Land & Titles Div. 1972).

Most recently, in *Fanene v. Fanene*, LT No. 73-90. 19 A.S.R.2d 69 (Land & Titles Div. 1991), the *pule* of the Fanene Filo side of the family was again upheld. The parties that were then before the court are the very same parties before the court today, and the question that was before the court in 1991 was whether Fanene Scanlan had the sole authority to issue

10

separation agreements relating to Lalopu`a. The court granted Fanene Scanlan's motion for summary judgment.

The principal argument in this latest attempt to resurrect the issue of *pule* is premised on yet another ruling of the Land and Titles Division, which does not appear to have been previously raised by plaintiff. In the case of *In the Matter of High Chief Title Mauga*, 4 A.S.R. 132 (Land & Titles Div. 1974), the court held that "Mauga" is not a split title. The court here considered the notion of split titles as being unsamoan but explained that two persons may jointly hold the same title. *Id.* at 139. It also purported to reverse *Tauvevematalilo v. Fanene Filo*, Civ. 1035 (1970), which held that when a matai title was registered as a split title and two groups of a family cannot agree to merge the title, successors to each holder of the split title may be selected. *Mauga*, 4 A.S.R. at 135.

However, this court is neither bound nor inclined to follow the statements made in the *Mauga* case, insofar as they pertain to the Fanene family or families of Pago Pago. First, the *Mauga* court's comments on the *Tauvevematalilo* case were not central to its decision on the case then before it. Second, at the time that case was decided, the High Court's rulings on split titles were inconsistent. *See, e.g., In re Registration of the Matai Title "Salave`a"*, 4 A.S.R. 44 (Land & Titles Div. 1971) (finding that matai titles may be split and that descendants of each branch may elect its own titleholder), *overruling Salave`a v. Salave`a*, No. 18-1919 (1919) (which ordered titles of two branches of a family "merged"). Significantly, these inconsistencies came about as a result of the court's ready resort to judicial notice of Samoan custom. The *Mauga* court simply reversed the *Tauvevematalilo* case because, upon "reconsideration," it viewed the earlier decision as being "ill-advised and in substantial derogation of Samoan custom." *Mauga*, 4 A.S.R. at 140. The court's views on the matai system were in part based upon the court's judicial notice of "the development of the matai system from its inception during the Polynesian migration from Asia until the present time. *See* Buck, 'Vikings of the Sunrise' (1938)." *Mauga*, 4 A.S.R. at 137-138. Likewise, the court's findings on the issue of "split titles" was a generalization similarly grounded on Samoan custom as judicially noticed by the court. *Id.* at 140. On the other hand, the exact opposite result was reached in *In re Registration of the Matai Title "Salave`a"*; the court there made the following observation on the matai system, as well as on the scope of the court's constitutional power with respect to issues touching on the matai system:

It may be well at this time to state that under the matai

11

> system there are certain fundamental rights that are
> passed from father to son through the blood. These
> rights are held sacred and lasting by all who live under
> the matai system and are considered above and beyond
> the limits of the authority of the courts or any other
> tribunal or power. One of these is the right of a
> Samoan to claim a matai title once held by an ancestor.

*Salave`a*, 4 A.S.R. at 46-47.

The *Mauga* court's premise is not particularly compelling. First, we note that the Land and Titles division has subsequently acknowledged that Samoan custom is neither static nor cast in stone. *See Fairholt v. Aulava*, 1 A.S.R.2d 73, 78 (Land & Titles Div. 1983) ("The Samoan way of life has shown that it can accommodate itself to change. Samoan culture is dynamic, energetic, forceful, and vigorous."). At the same time, our review of the *Tauvevematalilo* file reveals that that court's findings, to wit; separately developing family entities that gave rise to split titles, was founded on the evidence and testimony at trial, including an admission by "Tauveve Fanene [plaintiff Kava's predecessor in title] that their family is not related to the Fanene Filo family [plaintiff Scanlan's family]." These findings were not based on generalizations about Samoan custom; rather, they were findings relating to the affairs and historical development of a specific family in the village of Pago Pago as related by the parties' evidence on family development.[3]

■ In regards to the pule over the land Lalopu`a, the High Court has already decided the matter in favor of Fanene Scanlan and his predecessors in title. As such, Fanene Kava's suit is barred by *res judicata*. If at some time the two Fanene families decide and agree that theirs is truly one family and choose to reunite the Fanene title, that is their prerogative. There is nothing in law or custom to prevent that reunification; however, reunification is something best left to the evolutionary process of Samoan custom, as opposed to yet another conflicting judicial pronouncement on the issue of split/joint matai titles.

---

[3] Plaintiff Fanene Kava's claim of a singular Fanene family with joint titleholders seems rather puzzling in light of the fact that the only reason she is a titleholder today is because her predecessor in title's version of family history--about separate and distinct development of two separate and unrelated Fanene families--was earlier accepted by the court. The logical extension of plaintiff's contention would seem to be the elimination of the title she is holding, since the very premise for which the same was recognized in *Fanene Filo v. Vaoali`i K. Fanene*, 4 A.S.R. 603 (1965), would be overturned.

12

Defendant's motion to dismiss is, therefore, granted.

It is so ordered.